# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| **DWAYNE FOSTER**,<br><br>*Plaintiff*,<br><br>v.<br><br>**DIAMOND RESORTS INTERNATIONAL CLUB, INC. a/k/a DIAMOND RESORTS MANAGEMENT, INC. a/k/a DIAMOND RESORTS FINANCIAL SERVICES, INC. and EXPERIAN INFORMATION SOLUTIONS, INC.**<br><br>*Defendants*. | Case No:   6:24-cv-00162<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT AND DEMAND FOR JURY TRIAL

**COMES NOW** the Plaintiff, Dwayne Foster ("**Mr. Foster**"), by and through his attorneys, Seraph Legal, P.A., and complains of the Defendants, Diamond Resorts International Club, Inc., a/k/a Diamond Resorts Management, Inc., a/k/a Diamond Resorts Financial Services, Inc. ("**Diamond**") and Experian Information Solutions, Inc. ("**Experian**") (collectively, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Mr. Foster against the Defendants for violations of the *Fair Credit Reporting Act*, 15 U.S.C. § 1681, *et seq.* ("**FCRA**").

Page **1** of **22**

## JURISDICTION AND VENUE

2. Subject matter jurisdiction for Plaintiff's FCRA claims arises under 28 U.S.C. § 1331, as the FCRA is a federal statute and the relevant transactions were committed within Flagler County, Florida.

3. The Defendants are subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat., and Fed. R. Civ. P. 4(k).

4. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2), because Diamond and Experian regularly conduct business in this District, and Diamond maintains its principal offices in this district.

## PARTIES

5. **Mr. Foster** is a natural person who at all times relevant has resided in Glen Allen, Virgina.

6. Mr. Foster is a *Consumer* as defined by 15 U.S.C. § 1681a(c).

7. **Diamond** is an Arizona corporation with principal offices in Orlando, Florida.

8. **Diamond's** Florida registered agent is **Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.**

9. Diamond is a furnisher of information to multiple *Credit Reporting Agencies* ("**CRAs**"), including Experian, as that phrase is used within 15 U.S.C. § 1681, in that it regularly reports account payment and status data on consumer time-share loan agreements.

10. **Experian** is an Ohio corporation with a principal business address of 475 Anton Boulevard, Costa Mesa, CA 92626.

11. Experian is registered to conduct business in the State of Florida, where its registered agent is **CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324.**

12. Experian is a CRA within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and use various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including internet, mail and telephone communications.

## FACTUAL ALLEGATIONS

13. Sometime in or around July 2015, Mr. Foster and his wife purchased a vacation time-share unit at Ocean Beach Club, a property owned by Diamond.

14. Mr. Foster financed $16,297 through Diamond to cover the purchase of the time-share unit, financed at a 15.9% interest rate.

15. Disclosures provided to Mr. Foster note the contract is a "deferred purchase deed of trust note," meaning that, unlike a mortgage, a trustee – an unbiased third party – holds the property's title while the loan is being repaid. **SEE PLAINTIFF'S EXHIBIT A.**

16. A deed of trust provides certain benefits to the creditor, including, often, the ability to foreclose non-judicially.

17. A deed of trust is often used as an alternative to a mortgage in a real estate transaction providing the lender with different foreclosure options and involving a third part to safeguard the deed during the life of the agreement.

18. Around December 2016, Diamond began reporting the account to Experian.

19. Diamond reported the "account type" using Metro 2 code "26," meaning "Conventional Real Estate Mortgage, including Purchase Money First;" the *Credit Reporting Resource Guide* notes "Purchase Money First means that the proceeds of the loan are used to buy the property. This is a mortgage account that is not guaranteed by a government agency."

20. Diamond could have – but did not – report the "account type" using Metro 2 code "0A," or "time share loan."

21. Indeed, the *Credit Reporting Resource Guide* even has a "Frequently Asked Questions" section addressing this issue, stating "Question: How should timeshare mortgages and timeshare loans be reported? Answer: <u>If the timeshare account is a mortgage</u>, report the account according to the Mortgage Portfolio Type guidelines." (Emphasis original.)

22. Thus, as common-sense and the *Credit Reporting Resource Guide* both indicate, a time-share purchase agreement which is a deferred purchase deed of trust should not be reported as a mortgage because it is not a mortgage.

23. Around January 19, 2023, Mr. Foster applied for a home loan with QC Lending, LLC ("QC"), to be backed by the United States Veterans' Administration ("VA").

24. Mr. Foster's lender was unable to approve him specifically because of the Diamond tradeline appearing on Mr. Foster's Experian report, since it indicated that (1) it was a *mortgage* and noted it was a "conventional real estate loan" and had a 60-day late payment within the last 12 months, as the VA will not guarantee a loan for a veteran who has had mortgage payments more than 59 days late in the last year.

25. If Diamond reported the account correctly and accurately, as a *time-share loan*, Mr. Foster's lender would have been able to approve him for a mortgage since Mr. Foster had no other late mortgage history in the last 12 months.

## Mr. Foster's Disputes of the Debt

26. Around April 2023, Mr. Foster disputed the Diamond tradeline to Experian, stating he disputed the late payment history reported and, moreover, the account was not a mortgage but rather a time-share sales agreement.

27. Experian sent Diamond an *Automated Consumer Dispute Verification* Request ("**ACDV**") through a system known as e-OSCAR, requesting that Diamond make a reasonable investigation into the dispute.

28. Diamond responded to the ACDV a short time later and stated its reporting was accurate and required no update, change, or modification. **SEE PLAINTIFF'S EXHIBIT B.**

29. Diamond did not report the account was "disputed by consumer" or report any other Metro 2 Compliance Condition Code ("CCC") which would disclose the data was contested to readers of Mr. Foster's report.

30. In cooperation with the major CRAs, the **Consumer Data Industry Association** ("**CDIA**") publishes the Metro 2 reporting standards to assist furnishers with their compliance requirements under the FCRA. CDIA's reporting products are used in more than nine billion transactions each year. *See* http://www.cdiaonline.org/about/index.cfm?unItemNumber=515.

31. The Metro 2 Format Task Force is comprised of representatives from CRAs such as Equifax, Experian, Innovis, and TransUnion, and it is supported by the CDIA.

32. The Metro 2 Format Task Force's mission is to provide a standardized method for the reporting of accurate, complete, and timely data, and has developed the Metro 2 standards.

33. The Metro 2 standards provide uniformity in the reporting and interpretation of credit data, including credit-risk scoring.

34. Equifax, Trans Union and Experian require all data furnishers, such as Diamond, to report data according to Metro 2 standards.

35. Diamond did not adhere to Metro 2 standards when it (1) reported the account was a mortgage when it was a time-share sales agreement based on a deed of trust, and (2) when it failed to report any CCC of any kind despite Diamond being aware the data in the tradeline was disputed.

36. Diamond could have reported a Metro 2 CCC of "XB," meaning "consumer disputes this information," but it did not.

37. Diamond thus failed to conduct a reasonable investigation into Mr. Foster's dispute, as any reasonable investigation would have concluded payment for November 2022 was not more than 60 days late, as reported, and moreover, that the account itself was a time-share purchase agreement based on a deed of trust, and as such was not a mortgage, as had been reported.

38. To minimize costs, Diamond instructs its employees (or outside contractors) responding to ACDVs to quickly compare the information contained in the requesting CRA's files against Diamond's own internal records, and if the information matches, verify the reported information as accurate.

39. Diamond does not authorize its employees to make any actual investigation at all, beyond a *de minimis* comparison of CRA records to Diamond's own records.

40. For this reason, a consumer who disputes something specific about the data being reported – like the type of account reported -- will have his information confirmed as "accurate" simply because Diamond's own records show the personally-identifying information to be the same as the requesting CRA's.

41. Such policies are a virtual guarantee that investigations will be unreasonable, as it is virtually axiomatic that an investigation which precludes any consideration of the type of account reported would not somehow resolve a dispute about the accuracy of the type of account being reported.

42. Moreover, the employees/contractors answering the ACDVs are not trained to investigate disputes of this nature, nor are they empowered to make any actual investigations; the performance of the employees/contractors answering the ACDVs is evaluated on the number of disputes processed per hour, not the accuracy of the results produced.

43. The failure to update reporting to indicate disputed information is disputed in and of itself violates the FCRA. *See Saunders v. Branch Banking and Trust Company of Virginia* 526 F.3d 142 (4th Cir. 2008). *Seamans v. Temple University*, 744 F.3d 853, 864 (3d Cir. 2014), (private cause of action arises under § 1681s-2(b) when, having received notice of a consumer's potentially meritorious dispute, furnisher subsequently fails to report that claim is disputed).

44. Mr. Foster made a second dispute concerning the Diamond tradeline to Experian in May 2023; Diamond's investigation, and results, were the same as its previous one in April.

45. Disputes in August 2023 and December 2023 likewise resulted in no change or modification to Diamond's reporting.

46. Thus, even after four disputes in 12 months, Diamond still did not consider the tradeline data to be "disputed by consumer" or worthy of reporting any CCC of any kind.

**CRA's Investigations Were Not Reasonable**

47. The FCRA also requires that each CRA conduct its own investigation of a consumer dispute. 15 U.S.C. § 1681i.

48. Thus, upon receipt of Mr. Foster's disputes of the Diamond tradeline, Experian was legally required to investigate the dispute.

49. However, Experian relied almost solely upon the ACDVs furnished to Diamond and the responses thereto.

50. For at least the last 35 years, courts in this district have recognized that a CRA must make some independent reinvestigation of its own. *See Swoager v. Credit Bureau of Greater St. Petersburg*, 608 F. Supp. 972 (M.D.Fla.1985).

51. Experian's dispute resolution systems are heavily tilted in favor of their data furnishers, from whom they receive revenue monthly, and rest on the premises the data furnishers are always right, until categorically proven wrong by the consumer.

52. As a result, consumers like Mr. Foster, are left in a scenario where their only way to have their credit report corrected rests on their ability to disprove a negative.

53. Experian failed to conduct a reasonable investigation into Mr. Foster's disputes, as any reasonable investigation would have concluded that Mr. Foster's identity was stolen and that the Diamond Account did not belong to him, or at a minimum, that the Account was still disputed.

54. Even after the fourth dispute by Mr. Foster, the Diamond tradeline on Mr. Foster's Experian report remains unchanged. **SEE PLAINTIFF'S EXHIBIT D.**

55. The Diamond "mortgage" is the only negative or adverse mortgage account reporting in Mr. Foster's Equifax, Experian or Trans Union credit files.

56. Mr. Foster has otherwise acceptable credit, stable finances, and a good employment history.

57. Mr. Foster has also suffered severe emotional distress from continuing to deal with an account that he understood to be a time-share installment agreement – and was – reported falsely as a "mortgage" which resulted in him being unable to qualify for a mortgage he is otherwise well-qualified to obtain.

58. To alleviate any more damage to his credit, Mr. Foster paid the remaining balance on the time share property an received a confirmation letter dated January 12, 2024. **SEE PLAINTIFF'S EXHIBIT C.**

59. Mr. Foster has hired the aforementioned law firm to represent him in this matter and has assigned his right to fees and costs to such firm.

### COUNT I
### VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681s-2(b)
### Diamond Only

60. Mr. Foster hereby incorporates paragraphs 1 – 59 as if fully stated herein.

61. Diamond violated **15 U.S.C. § 1681s-2(b)** when it failed, on at least four separate occasions, to conduct a reasonable investigation after receiving notice of dispute of the Account from Experian, as any reasonable investigation would have

concluded the account data could not be verified as accurate, as it reported late payments not actually late, it reported the account was a "mortgage" despite not being a mortgage; at a minimum, anything approaching a reasonable investigation would have determined the Account data was disputed by Mr. Foster.

62. Diamond's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, and as undisputed, when the data is meritoriously disputed.

63. Diamond's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable investigations, and its policies could reasonably be foreseen to cause harm to Mr. Foster.

64. Accordingly, pursuant to 15 U.S.C. § 1681n, Diamond is liable to Mr. Foster for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

65. Alternatively, Diamond's conduct was the result of negligence, and pursuant to 15 U.S.C. § 1681o, Diamond is liable to Mr. Foster for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Foster respectfully requests this Honorable Court to enter judgment against Diamond for:

    a. The greater of statutory damages of $4,000 ($1,000 per incident) or Mr. Foster's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or

   in the alternative, Mr. Foster's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

 b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

 c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

 d. Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FCRA - 15 U.S.C. § 1681i(a)(1)(A)
### Experian Only

66. Mr. Foster hereby incorporates paragraphs 1 – 59 as if fully stated herein.

67. Experian violated **15 U.S.C. § 1681i(a)(1)(A)** when it failed to conduct a reasonable investigation into the four dispute of the Diamond tradeline by Mr. Foster, since any reasonable investigation would have concluded the account data could not be verified as accurate, as it reported late payments not actually late, and it reported the account was a "mortgage" despite not being a mortgage; at a minimum, anything approaching a reasonable investigation would have determined the Account data was disputed by Mr. Foster.

68. Experian's conduct was a result of its regular policies and procedures, which frequently result in the verification of reported information as accurate, when it is not, in large part due to Experian's virtually-complete reliance on data furnishers ACDV responses to complete its "investigations."

69. Experian's conduct was thus willful and intentional, or, alternately, was done with a reckless disregard for its duties under the FCRA to make reasonable

investigations, and its policies could reasonably be foreseen to cause harm to Mr. Foster.

70. Accordingly, pursuant to 15 U.S.C. § 1681n, Experian is liable to Mr. Foster for the greater of his actual damages and statutory damages of up to $1,000 for *each occurrence*, as well as punitive damages, reasonable attorney's fees, and costs.

71. Alternatively, Experian's conduct was the result of negligence, and pursuant to 15 U.S.C. § 1681o, Experian is liable to Mr. Foster for his actual damages, as well as his reasonable attorney's fees, and costs.

**WHEREFORE,** Mr. Foster respectfully requests this Honorable Court to enter judgment against Experian for:

a. The greater of statutory damages of $4,000 ($1,000 per incident) or Mr. Foster's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A), or in the alternative, Mr. Foster's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and,

d. Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Mr. Foster hereby demands a trial by jury on all issues so triable.

Respectfully submitted on January 25, 2024, by:

**SERAPH LEGAL, P. A.**

*/s/ Christian E. Cok*
Christian E. Cok, Esq.
Florida Bar No.: 1032167
CCok@SeraphLegal.com
2124 W Kennedy Blvd., Suite A
Tampa, FL 33606
Tel: 813-567-1230
Fax: 855-500-0705
*Attorney for Plaintiff*

**ATTACHED EXHIBIT LIST**

| | |
|---|---|
| A | 2015 Time Share Purchase Agreement - Excerpt |
| B | April 2023 Dispute Results – Excerpt |
| C | Mr. Foster's Time Share Payoff Letter – January 12, 2024 |
| D | Mr. Foster's Experian Report – Diamond Tradeline – Except – December 22, 2023 |